[No. 27272. Department Two. December 6, 1938.]

J. W. ADAMS, *Respondent,* v. THE BUILDING SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL No. 6, *et al., Appellants.*[1]

[1] Reported in 84 P. (2d) 1021.

*Stevenson & Gershon,* for appellants.

*John W. Whitham,* for respondent.

*Donworth, Paul & Donworth, Robert W. Maxwell, Grosscup, Morrow & Ambler,* and *Eisenhower & Hunter, amici curiae.*

MILLARD, J.—J. W. Adams, a licensed nurseryman, who has been doing business under the name Richmond Nurseries in King county for thirty-two years, raises more than ninety per cent of his stock. The nursery, in which seven persons are employed, comprises about fifteen acres of land and has a stock valued at approximately sixty thousand dollars, including real estate and equipment. Neither Adams, who does not object to his employees joining a union if they desire to do so, nor any of his seven employees is a member of any labor union.

The Building Service Employees International Union, which is an affiliate union of the American Federation of Labor, is made up of various sections (including the office building section, the hotel section, the hospital section, etc.), and claims jurisdiction of nursery workers and landscape gardeners in one section.

Jess Fletcher, J. W. Horton, and Merwin Cole are, respectively, president, secretary, and business agent in charge of the gardeners' section of Building Service Employees International Union Local No. 6. Mr. Cole called on Mr. Adams and tried to induce him to enter into an agreement to comply with the union's requirements respecting wages and hours for nursery workers. Local No. 6, through its officers, also endeavored to persuade

Mr. Adams' employees (some of whom, it was insisted, complained to the union concerning their hours of labor and wages) to become members of the union. There was some evidence that the employees agreed to join the union if their employer—he did not object to their joining—signed the agreement Mr. Cole urged him to make with Local No. 6.

On or about March 16, 1938, Local No. 6, having failed in its efforts to organize the employees of Mr. Adams and to persuade him to enter into an agreement with it, commenced to "picket" Mr. Adams' nursery to compel compliance with its demands. The picketing continued until March 30th. Except Sunday, March 20th, when the pickets numbered from five to twelve, two persons, or pickets, daily patrolled near Mr. Adams' place of business. These pickets carried banners which announced that the nursery was picketed by an American Federation of Labor union and that the nursery was unfair to organized labor. Also printed on the banners was a request to the nursery's prospective purchasers that they support the union in its campaign. A loudspeaker was used by the union to inform all within its range that the names and addresses of other nurseries, who were members of the union, in that district who would sell nursery products at a reasonable price would be furnished. Photographs were taken of prospective patrons of Adams' nursery. A record was made of automobile license plate numbers for the purpose of later inducing Mr. Adams' customers, whose names were thus obtained, to refrain from trading with Mr. Adams.

On March 21, 1938, a temporary restraining order was entered enjoining Local No. 6 and its three officers named above from interfering with Mr. Adams in the conduct of his business. On May 4, 1938, a decree was entered granting to plaintiff Adams a permanent in-

junction and awarding damages to him in the amount of five hundred dollars against defendants, who prosecute this appeal from that decree.

Counsel for appellants contend that the trial court had no jurisdiction to enjoin the appellants, since the case involved a "labor dispute" within the meaning of Laws of 1933, Ex. Ses., p. 10 (Rem. Rev. Stat. (Sup.), § 7612-1 [P. C. § 3467-21] *et seq.*), the pertinent provisions of which are as follows:

"No court of the State of Washington or any judge or judges thereof shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this act; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this act." Laws of 1933, Ex. Ses., p. 10, § 1 (Rem. Rev. Stat. (Sup.), § 7612-1 [P. C. § 3467-21]).

"When used in this act, and for the purpose of this act—

"(a) A case shall be held to involve or grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between the one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or association of employers; or (3) between one or more employees or association of employees and one or more employees or association of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute

if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which dispute occurs, or has a direct or indirect interest therein or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." Laws of 1933, Ex. Ses., p. 17, § 13 (Rem. Rev. Stat. (Sup.), § 7612-13 [P. C. § 3467-33]).

It is argued that our statute is copied from the Norris-LaGuardia Act (29 U. S. C. A., §§ 101-115), under which the Federal courts (which we should follow) hold that a dispute arising out of the desire and attempt of a labor union to organize employees and to secure union wages and hours for them is a labor dispute, and that, under the act, the court is without jurisdiction to enjoin a labor union from persuading or coercing an employer to induce his employees, who are not members of any union, to join the labor organization.

On the trial of the cause, respondent insisted that he and his employees are classified as agriculturists under the taxing provisions of the social security act, hence they are not within the purview of the labor disputes act. There was admitted in evidence a letter from the president of the American Federation of Labor to the effect that building service employees have no jurisdiction over nursery workers, and that the charter granted by the American Federation of Labor to appellant union does not in any way extend to nursery workers. The Seattle Central Labor Council—with which appellant union is affiliated—according to

testimony of two of its officers, never sanctioned the picketing of respondent's nursery.

The construction of the Norris-LaGuardia Act by the Federal courts, the question whether nursery employees are agriculturists, the question whether the Building Service Employees International Union has jurisdiction over nursery workers, and the question whether the "picketing" was or was not recognized as "legal" by organized labor because the Central Labor Council of Seattle had not sanctioned that picketing, are unimportant in the determination of the questions presented by this appeal.

The question whether the legislature may divest the courts of this state of jurisdiction to issue a restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute is foreclosed by *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P. (2d) 397.

The question whether a "labor dispute," within the labor disputes act of this state, is involved where a union is engaged in picketing an employer's place of business on account of the employer's failure to induce his employees to join the picketing union, and on account of the refusal of the employer to enter into an agreement with the union respecting the wages and hours of labor of his employees, where the union in question is not composed of employees of the employer involved, is foreclosed by *Safeway Stores v. Retail Clerks' Union,* 184 Wash. 322, 51 P. (2d) 372.

An adjustment to the satisfaction of appellants of their controversy with respondent might result in shorter hours and increased pay for respondent's employees; however, none of those employees is a member of appellant union, and there was no controversy between respondent and his employees. The purpose of the picketing was to compel respondent's employees,

who were unwilling to join Local No. 6 unless respondent also signed the agreement demanded by appellants, to become members of the picketing union; that is, respondent was to be compelled at the cost of the destruction of his business to coerce his employees, who are at liberty to do as they please, to join appellants' organization.

We held in *Safeway Stores v. Retail Clerks' Union*, 184 Wash. 322, 51 P. (2d) 372, that that does not constitute a labor dispute within the labor disputes act of this state, and that a picketed employer under such conditions is entitled to injunctive relief. That decision was filed November 8, 1935. Since that date, we have had one session (1937) of the legislature. At that 1937 session of the legislature, there was no amendment of the labor disputes act evincing an intent to override our construction. The acquiescence on the part of the legislature in our construction of the statute is evidence that such construction is in accordance with the legislative intent.

Counsel for appellants contend that there was no basis upon which to predicate a money judgment for damages. Our examination of the record fails to elicit any evidence showing what the profits of respondent's business were or what percentage of his sales constituted profit. Respondent and his bookkeeper were unable to testify what respondent's profits were. In *St. Germain v. Bakery & C. Workers' Union*, 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F, 824, we held under similar facts there was no basis for a judgment for any substantial amount. We said:

"Appellants insist that they are entitled to damages. The record shows, beyond dispute, that there was a large falling off in the appellants' business immediately after pickets were stationed in front of the premises, and while it is plain that the appellants are entitled to recover the damages they have suffered by reason of

the unlawful picketing, we find nothing in the record upon which to base a judgment for any substantial amount. We find nothing in the record showing what the profits of the business were. The average gross receipts for many months prior to the picketing complained of amounted to more than $4,000 per month. Thereafter, the average receipts amounted to little more than $1,000 per month. But, without a showing of the profits which the appellants made, a judgment for damages cannot be based upon average receipts. We are of the opinion that, under the facts, the trial court should have granted nominal damages."

The trial court erred in awarding respondent other than nominal damages. Thus modified, the decree is affirmed.

STEINERT, C. J., BEALS, GERAGHTY, and SIMPSON, JJ., concur.

'Reported in 84 P. (2d) 1009.