[No. 28155.   *En Banc.*   December 12, 1940.]

J. E. SHIVELY et al., *Appellants,* v. GARAGE EMPLOYEES LOCAL UNION NO. 44 et al., *Respondents.*[1]

*Henry Clay Agnew,* for appellants.

*Vanderveer, Bassett & Geisness,* for respondents.

*Bogle, Bogle & Gates, amicus curiae.*

[1]Reported in 108 P. (2d) 354.

JEFFERS, J.—This action was instituted by J. E. Shively and W. V. Frisby against Garage Employees Local Union No. 44 and Gordon Lindsay, its secretary and business agent, for the purpose of enjoining defendants from picketing plaintiffs' places of business, or using any coercive measures whatsoever, with the intent to force plaintiffs to discharge their present employees or compel them against their will to join defendant union.

The complaint alleges that plaintiffs each own and operate a retail gasoline station in the city of Seattle; that plaintiff Frisby has two employees only, and plaintiff Shively one employee; that all the employees of plaintiffs are thoroughly satisfied with their wages, hours, and conditions of employment, and have not requested and do not wish the defendant union to act as their bargaining agency.

The complaint further alleges that none of plaintiffs' employees is a member of defendant union, nor is either of the plaintiffs a member of such union; that defendant union has demanded that plaintiffs sign a contract agreeing to employ only members of defendant union; and that the signing of such a contract would force plaintiffs either to compel their employees to join defendant union against their will, on threat of loss of their jobs, or to discharge their employees solely because such employees, who are satisfactory to the plaintiffs, had exercised their freedom of choice, as defined by Rem. Rev. Stat. (Sup.), § 7612-2 [P. C. § 3467-22], Laws of 1933, Ex. Ses., chapter 7, p. 10, § 2.

It is further alleged that, solely by reason of the refusal of plaintiffs to sign the contract, defendants are now carrying out the following coercive measures directed against the plaintiffs, to-wit: Defendants have caused the places of business of both plaintiffs to be picketed, and have in each case employed a picket

to march upon the sidewalk prominently in front of plaintiff's place of business, bearing sandwich signs upon which appear the words, "Union people look for the union shop card," and a picture of the official union shop card issued by defendant union. Defendants have caused each picket to openly take the license numbers of cars belonging to plaintiffs' customers, which acts were intended to, and do, result in loss of business to plaintiffs.

The complaint further alleges that, as a result of such picketing, plaintiffs are now suffering irreparable injury and damage to their business in loss of profits, which damages are difficult of proof, and that plaintiffs have no plain, speedy, or adequate remedy at law.

To this complaint, defendants interposed a demurrer upon the grounds, first, that it does not state facts sufficient to constitute a cause of action against the defendants or either of them, and second, that it does not state facts sufficient to entitle the plaintiffs, or either of them, to the relief prayed for, or to any relief whatsoever.

The matter came on for argument on the demurrer July 29, 1940, after which the trial court made and entered an order sustaining the demurrer to the complaint, upon the sole ground that, "by reason of the fourteenth amendment to the constitution of the United States, it does not state facts sufficient to constitute a cause of action."

The reason for the trial court's ruling more fully appears in the body of the above order, in the following language:

"And the court having heard the arguments of counsel and being of the opinion that the activities of the defendants which the plaintiffs seek to enjoin are among the fundamental personal rights and liberties secured to all persons by the fourteenth amendment to the constitution of the United States, and that to en-

join such activities would deprive the defendants of freedom of speech and of the press guaranteed them by said amendment, and the court being fully advised in the premises . . ."

Plaintiffs having refused to plead further and having elected to stand on their complaint, the court, on July 30, 1940, entered a judgment of dismissal with prejudice, and this appeal by plaintiffs follows.

Appellants make the following assignments of error: (1) That the court erred in sustaining the demurrer; (2) in refusing a temporary restraining order; and (3) in dismissing the cause of action.

Appellants have stated the questions involved as follows:

(1) Is picketing by a labor union, with the intent thereby to force employees to join a union contrary to their desires, unlawful?

(2) Do the provisions of the Federal and state constitutions, guaranteeing the right of free speech, deprive the court of power to prevent picketing for an unlawful or criminal purpose?

Respondents, on the other hand, state the questions involved in the following manner:

(1) Do the provisions of the Federal constitution, guaranteeing freedom of speech and of the press, authorize members of a labor union to "peacefully picket" an employer's place of business for the purpose of informing the public, and particularly members of organized labor, that such employer does not hire union labor?

(2) Do the inhibitions of the fourteenth amendment to the constitution of the United States apply to state courts as well as to all other departments and agencies of state government?

We do not think the propositions as stated by either of the parties quite cover the questions which we be-

564

lieve are presented for our determination. We are of the opinion respondents' first question is objectionable at least for the reason that it assumes the picketing in the instant case was done for a purpose different from that alleged in the complaint. This matter being here only on the pleadings, we must assume as true the facts well pleaded, which of course are admitted by the demurrer. Neither do we think the first question stated by appellants quite covers the situation here presented.

We think the question presented may be stated as follows: Does the fourteenth amendment to the United States constitution prevent the courts of this state from granting injunctive relief against a labor union and the members thereof, to prohibit such union from peacefully picketing the place of business of a nonunion employer, none of whose employees is a member of such union, where the purpose of such picketing has been held to be unlawful?

In the following cases, we have held that peaceful picketing of the place of business of an employer, by a union which does not include in its membership any employee of such employer, for the purpose of persuading or coercing such employees to join a union against their will, is unlawful: *Safeway Stores v. Retail Clerks' Union,* 184 Wash. 322, 51 P. (2d) 372; *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P. (2d) 397; *Adams v. Building Service Employees etc. Union,* 197 Wash. 242, 84 P. (2d) 1021; *Fornili v. Auto Mechanics' Union,* 200 Wash. 283, 93 P. (2d) 422; *United Union Brewing Co. v. Beck,* 200 Wash. 474, 93 P. (2d) 772; *Bloedel Donovan Lbr. Mills v. International Wood-Workers,* 4 Wn. (2d) 62, 102 P. (2d) 270.

Inasmuch as the *Safeway* case, *supra,* is cited and approved in the other cases above cited, and because

we will hereinafter refer especially to a certain part of that opinion, we believe we should again set out certain portions of that opinion, and from it we therefore quote:

"The vital, controlling question at issue here is plain and easy of solution. It in no way pertains to the relations between the appellant, a merchant, and its employees. For aught that appears, they are content and satisfied, among themselves. On the contrary, this is a lawsuit between appellant and a third party—a labor union that does not include in its membership any employee of the appellant. What right have the respondents to insist or demand, *at the threat or cost of the destruction of appellant's business, or at all,* that appellant ask, urge or coerce, directly or indirectly, its employees, who are at liberty to do as they please, to join respondents' organization? Of course, there is nothing unlawful in hiring clerks or salesmen who are not members of a local organization such as the respondent; and any attempt, like that in this case, to deny or cripple one's right to do so is an unwarranted attempt by individuals or persons *to unreasonably interfere with the freedom of the liberty and property right of contract.*

"The conduct of respondents, in conjunction with that of appellant, cannot be termed a labor dispute. It is an unwarranted attempt on the part of respondents to compel appellant, against its right of choice, to become active in the cause of respondents, with the result that, upon the failure of that attempt, respondents purposely commenced and continued picketing, to appellant's damage . . ." (Italics ours.)

We stated in *Blanchard v. Golden Age Brewing Co., supra:*

"The right to earn a livelihood and to continue in employment unmolested by unwarranted activities of third persons is entitled to protection in equity. *Truax v. Raich,* 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, Ann. Cas. 1917B, 283. A correlative principle is that the employer has the right freely to maintain relations of employment with whomsoever he desires, and no one

has the right purposely to disrupt or interfere with those relations by the intentional resort to such measures as will obviously, and in the ordinary course of events, inflict irreparable injury upon the employer. *Hitchman Coal & Coke Co. v. Mitchell,* 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, Ann. Cas. 1918B, 461."

Respondents contend, however, that peaceful picketing such as was alleged to exist in this case, is an incident of the right of free speech, and is therefore protected from infringement by the fourteenth amendment of the United States constitution. Respondents especially rely on the following cases to sustain this contention: *Senn v. Tile Layers Protective Union,* 301 U. S. 468, 81 L. Ed. 1229, 57 S. Ct. 857; *Thornhill v. Alabama,* 310 U. S. 88, 84 L. Ed. 1093, 60 S. Ct. 736; and *Carlson v. California,* 310 U. S. 106, 84 L. Ed. 1104, 60 S. Ct. 746.

The first amendment to the constitution of the United States provides:

"Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

The fourteenth amendment provides:

". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

We are therefore now confronted with the question of whether the constitutional guaranty of freedom of speech is an absolute right, which may be exercised without any qualification, or whether, like other rights,

it must be exercised with reasonable regard for the conflicting rights of others.

We are of the opinion the right of freedom of speech is not absolute.

In *Hitchman Coal & Coke Co. v. Mitchell,* 245 U. S. 229, 62 L. Ed. 260, 38 S. Ct. 65, Ann. Cas. 1918B, 461, the question of the relative rights of the parties in case of a conflict between the right of a union to organize and the right of a property owner to be free from interference in his right to do business, was presented. The court in commenting said:

"The cardinal error of defendants' position lies in the assumption that the right is so absolute that it may be exercised under any circumstances and without any qualification; whereas in truth, like other rights that exist in civilized society, it must always be exercised with reasonable regard for the conflicting rights of others."

The above citation from the *Hitchman Coal* case is quoted with approval in *Meadowmoor Dairies v. Milk Wagon Drivers' Union,* 371 Ill. 377, 21 N. E. (2d) 308, decided April 14, 1939. This case also, in referring to the case of *Senn v. Tile Layers Protective Union, supra,* stated:

"The principle underlying these distinctions has not been overruled, and in the case of *Senn v. Tile Layers' Protective Union, supra,* in upholding a Wisconsin act similar to the Norris-LaGuardia act, the court says: 'The statute provides that the picketing must be peaceful; and that term as used implies not only absence of violence, *but the absence of any unlawful act.*'" (Italics ours.)

In *Swing v. American Federation of Labor,* 372 Ill. 91, 22 N. E. (2d) 857, decided June 19, 1939, the court stated:

"The second contention of the appellants concerns the constitutional right to freedom of speech. It is

contended by them that section 4 of article 2 of the constitution of Illinois and the fourteenth amendment to the constitution of the United States protect them in their exhibition of the placards and signs derogatory to the plaintiffs' business and intended to destroy it. It is said that for such a wrong, if it be a wrong, or if the statements be untrue, the remedy must be by civil action or by prosecution for criminal libel. The implication of this argument is that the constitutional guaranty of freedom of speech extends so far as to make it a guaranty of freedom to libel; that under this constitutional provision those other provisions guaranteeing due process and equal protection of law must be submerged. Our liberties and means of livelihood are not held by so slender a thread nor a title so tenuous. The right of one group to organize for the advancement of its own ends is exactly equal to but no greater than the right of other citizens peaceably to pursue their own lawful occupations. . . . Under the basic principles of due process a person may not be punished nor his property and business destroyed without a day in court on proper charge and notice with an opportunity to be heard. Yet it is here contended a self-organized group may determine that the plaintiffs may no longer be permitted to earn an honest living by lawful means and forthwith proceed by libelous banners to execute their death sentence."

We appreciate, of course, that the decision of the supreme court of Illinois may not be final, in so far as a Federal constitutional question is concerned, but we cite the Illinois decisions because we are impressed with the logic and reasoning therein contained, in support of the opinion of that court that the constitutional guaranty of freedom of speech is not an absolute right, but one upon the exercise of which the court had the right to place a reasonable limitation.

In further support of the contention that the constitutional guaranty of freedom of speech is not absolute, we call attention to the cases of *Aikens v. Wis-*

*consin,* 195 U. S. 194, 49 L. Ed. 154, 25 S. Ct. 3, and *Gompers v. Buck's Stove & Range Co.,* 221 U. S. 418, 55 L. Ed. 797, 31 S. Ct. 492, 34 L. R. A. (N. S.) 874.

In the instant case, we are concerned with balancing appellants' right to carry on lawful businesses, free from unreasonable interference, and respondents' right to freedom of speech. Neither of these rights is absolute, in the sense that it may be exercised in utter disregard of the other; both cannot be unqualifiedly exercised at the same time. It is within the power of the court to decide whether appellants should be denied their right to conduct their businesses free from unjustifiable interference by respondents, or whether respondents' right of freedom of speech should be reasonably limited.

We do not believe this question is one of first impression, although it now is presented to us in a different form, presenting the constitutional issue. However, although the question is changed in form, we are of the opinion it remains the same in substance as that presented to this court in the *Safeway Stores* case, the *Adams* case, the *Fornili* case, and the *United Union Brewery* case, *supra.* Underlying the decisions in the cases last above referred to, is a consideration by this court of the conflicting constitutional rights of the outside union on the one hand, and the nonunion employer on the other. We again call attention to the opinion in the *Safeway* case:

"Of course, there is nothing unlawful in hiring clerks or salesmen who are not members of a local organization such as the respondent; and any attempt, like that in this case, to deny or cripple one's right to do so is an unwarranted attempt by individuals or persons to *unreasonably interfere with the freedom of the liberty and property right of contract.*" (Italics ours.)

Upon further consideration of these matters, as between the parties here involved, and mindful of the

present contention of respondents, we are still of the view that respondents cannot justifiably, even by means of peaceful picketing, interfere with the non-union employer's right to conduct his business without molestation. To thus interfere, is an unjustifiable wrong done to the employer. The fourteenth amendment cannot be invoked as a mantle of protection under which the wrongdoer can plead immunity from the judicial processes of our courts.

Decisions of the supreme court of the United States to the effect that picketing of the character here involved is lawful, in construing the Norris-LaGuardia act, are not controlling upon this court. It is apparent, from the decision in *Adams v. Building Service Employees etc. Union, supra,* that, in construing our own anti-injunction statutes, this court has not seen fit to follow the supreme court of the United States in its construction of the Norris-LaGuardia act, as to what constitutes a labor dispute. It was stated in the *Adams* case, that, since the legislature of 1937 had met subsequent to the decision of the *Safeway* case in 1935, and had made no amendment to the labor dispute act evincing an intent to override our construction of that act, such acquiescence on the part of the legislature in our construction was evidence that such construction was in accordance with the legislative intent.

It is for this state to determine, under the exercise of its police powers, what conduct of its citizens shall be lawful and what shall not be. Of course, the state may not declare unlawful that which the constitution of the United States, as interpreted by the supreme court of the United States, has expressly made lawful. However, so far as we have been able to determine, on no occasion has the supreme court of the United States held that the state courts may not enjoin a labor union from engaging in unlawful picketing (unlawful

under the laws and decisions of that state) because of any inhibition to be found in the fourteenth amendment.

Respondents, in support of the contention made in the instant case, rely principally on three cases under which they contend the former decisions of this court, to which reference has been made, are not controlling, and further contend that, because of the decisions in those three cases, peaceful picketing is protected by the fourteenth amendment and cannot be enjoined by the courts of this state, under the circumstances of this case. We fully appreciate the importance of the question raised, both to employers who are situated as appellants are in this case, and to labor unions, and we have carefully considered the cases cited by respondents, to which we shall now refer.

In *Senn v. Tile Layers Protective Union,* 301 U. S. 468, 81 L. Ed. 1229, 57 S. Ct. 857, Mr. Justice Brandeis, who wrote the opinion, very carefully pointed out that the conduct complained of was favored by the public policy of Wisconsin, as expressed by its legislature and its court, saying:

"The Legislature of Wisconsin has declared that 'peaceful picketing and patrolling' on the public streets and places shall be permissible. . .. .

"The laws of Wisconsin, as declared by its highest court, permits unions to endeavor to induce an employer, when unionizing his shop, to agree to refrain from working in his business with his own hands—so to endeavor although none of his employees is a member of a union. *Whether it was wise for the State to permit the unions to do so is a question of its public policy—not our concern.* The Fourteenth Amendment does not prohibit it. . . .

"Exercising its police power, Wisconsin has declared that in a labor dispute peaceful picketing and truthful publicity are means legal for unions. . . .

"We hold that the provisions of the Wisconsin stat-

ute which authorized the conduct of the unions are constitutional. One has no constitutional right to a 'remedy' against the *lawful conduct* of another." (Italics ours.)

We are satisfied that the holding in the *Senn* case cannot be taken as expressing the view of the supreme court on a situation not then before it and such as here presented, where the conduct complained of has been expressly held by the courts to be unlawful.

In *Thornhill v. Alabama,* 310 U. S. 88, 84 L. Ed. 1093, 60 S. Ct. 736, and *Carlson v. California,* 310 U. S. 106, 84 L. Ed. 1104, 60 S. Ct. 746, the supreme court had before it, in the first case, a state statute, and in the second case, a municipal ordinance. In both the state statute and the ordinance, *all* forms of picketing were, in effect, forbidden. In considering the above cases, no distinction in treatment was made between the state statute and the municipal ordinance.

We think it essential in the beginning to appreciate the precise question which was being considered in the above cases. The court, speaking through Mr. Justice Murphy, has clearly set forth the scope of the rule which was being laid down. We are of the opinion the decisions do not purport to decide the merits of petitioners' claims to constitutional protection for their conduct on those occasions; they go no further than to consider the constitutionality of the statute and ordinance under which the convictions were had. These were considered "on their face" to be unconstitutional, and therefore any conviction under them, for any conduct whatsoever, was a nullity, and could not be upheld. We quote from the *Thornhill* case:

"The section in question must be judged upon its face.

"The finding against petitioner was a general one. *It did not specify the testimony upon which it rested.* The charges were framed in the words of the statute

and so must be given a like construction. The courts below expressed no intention of narrowing the construction put upon the statute by prior State decisions. In these circumstances, *there is no occasion to go behind the face of the statute or of the complaint for the purpose of determining whether the evidence, together with the permissible inferences to be drawn from it, could ever support a conviction founded upon different and more precise charges.* . . .

"There is a further reason for testing the section on its face. Proof of an abuse of power in the particular case has never been deemed a requisite for attack on the constitutionality of a statute purporting to license the dissemination of ideas. . . . An accused, after arrest and conviction under such a statute, does not have to sustain the burden of demonstrating that the State could not constitutionally have written a different and specific statute covering his activities as disclosed by the charge and the evidence introduced against him. . . . Where regulations of the liberty of free discussion are concerned, there are special reasons for observing the rule that it is the statute, and not the accusation or *the evidence* under it, which prescribes the limits of permissible conduct and warns against transgression. . . .

"*Fourth.* We think that Section 3448 is invalid on its face." (Italics ours.)

See last sentence of footnote 23: "And § 3448, in any event, must be tested upon its face."

Quoting from the opinion in the *Carlson* case:

"This case presents the question whether regulations embodied in a municipal ordinance abridge the freedom of speech or of the press secured against state invasion by the Fourteenth Amendment. . . .

"Our decision in *Thornhill v. Alabama,* No. 514, decided this day [310 U. S. 88, 60 S. Ct. 746], goes far toward settling the issues presented here. Under that decision, Section 2 of the ordinance in question is to be judged upon its face."

Tested on its face, each statute was found unconstitutional because of its scope and inherent danger—

danger caused by the fact that such a statute readily lends itself to harsh and discriminatory enforcement by local prosecuting officials. This thought is shown in the *Thornhill* case, as follows:

The rule that proof of an abuse of power in a particular case has never been deemed a requisite for attack on the constitutionality of such a statute

" . . . derives from an appreciation of the character of the evil inherent in a licensing system. The power of the licensor against which John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing' is pernicious not merely by reason of the censure of particular comments but by reason of the threat to censure comments on matters of public concern. It is not the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion. See *Near v. Minnesota,* 283 U. S. 697, 713. One who might have had a license merely for the asking may therefore call into question the whole scheme of licensing when he is prosecuted for failure to procure it. . . . A like threat is inherent in a penal statute, like that in question here, which does not aim specifically at evils within the allowable area of State control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or of the press. The existence of such a statute, which readily lends itself to harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure, results in a continuous and pervasive restraint on all freedom of discussion that might reasonably be regarded as within its purview."

It is evident that the statute and ordinance in the cases last cited ban all picketing, without regard to whether it is in aid of a lawful or an unlawful purpose. We fully appreciate that, if we were to countenance such a broad use of the injunctive power of the

courts of this state as to forbid all picketing, whether such picketing be in aid of a lawful or an unlawful purpose, there would be a like abridgment of constitutional rights. But the facts of this case do not involve that issue. We are asked by appellants to go no further than to enjoin a wrongful conduct—wrongful because it inflicts unjustifiable and material damage to their property rights.

We are further of the opinion that the *Thornhill* case recognized the right of the state to place a reasonable limitation upon the freedom of speech. We quote again from that opinion:

"We are not now concerned with picketing en masse or *otherwise* conducted which might occasion such imminent and aggravated danger to these interests as to justify a statute narrowly drawn to cover the precise situation giving rise to the danger. . . . Section 3448 in question here does not aim specifically at serious encroachments on these interests and does not evidence any such care *in balancing these interests* against the interest of the community and that of the individual in freedom of discussion on matters of public concern." (Italics ours.)

We are therefore of the opinion there is nothing in the *Senn* case, the *Thornhill* case, or the *Carlson* case, which compels this court to recede from the position taken and the rule announced in the *Safeway* case and the other cases herein referred to which follow and approve the rule announced in the *Safeway* case.

We therefore conclude that appellants, under the facts of this case and the law as laid down by this court, are entitled to injunctive relief, and that such relief may be granted without violating the constitutional guaranty of freedom of speech.

The judgment of the trial court is reversed, with in-

struction to enter an order overruling respondents' demurrer to appellants' complaint.

STEINERT, SIMPSON, MAIN, and ROBINSON, JJ., concur.

MILLARD, J. (concurring)—This court's frequent interpretation of Laws of 1933, Ex. Ses., chapter 7, p. 10, Rem. Rev. Stat. (Sup.), § 7612-1 [P. C. § 3467-21] *et seq.*, to the effect that peaceful picketing of the place of business of an employer, by a union which does not include in its membership any employee of such employer, for the purpose of coercing such employees to join a union, is unlawful, while contrary to the United States supreme court's view as to what constitutes a labor dispute under the provisions of the Norris-La-Guardia Act, has not been disapproved by subsequent sessions of our legislature. As it is for this state to determine, as observed in the majority opinion, under the exercise of its police powers, what conduct of its citizens shall be lawful or unlawful, it follows that, until the United States supreme court requires us to recede from the position we have taken (the case at bar affords that opportunity), we are bound by *Safeway Stores v. Retail Clerks' Union*, 184 Wash. 322, 51 P. (2d) 372, and subsequent opinions of this court to the same effect cited in the majority opinion.

BLAKE, C. J. (dissenting)—In this case, the right of working men and women to engage in peaceful picketing is again challenged. The challenge presents two questions: (1) Is this court warranted in enjoining peaceful picketing in face of decisions of the supreme court of the United States holding it to be a right guaranteed by the Federal constitution? (2) Has this court the right to enjoin peaceful picketing in face of the following provisions of Laws of 1933, Ex.

Ses., chapter 7, p. 10 *et seq.*, §§ 4 and 13, Rem. Rev. Stat. (Sup.), §§ 7612-1 to 7612-15 [P. C. §§ 3467-21 to 3467-35], inclusive?

"Sec. 4. No court of the State of Washington shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute or prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:  . . .

"(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;  . . .

"Sec. 13. When used in this act, and for the purpose of this act—  . . .

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether or not the disputants stand in the proximate relation of employer and employee.*" (Italics mine.)

Of the second question, I shall say little. The act is known as the state Norris-LaGuardia act, being identical with an act of Congress so characterized. It has been enacted in many states in identical or similar terms; and all courts, except our own, before which it has been challenged, have held it to be constitutional and have accepted it at its face value. *New Negro Alliance v. Sanitary Grocery Co.*, 303 U. S. 552, 82 L. Ed. 1012, 58 S. Ct. 703; *Lauf v. E. G. Shinner & Co.*, 303 U. S. 323, 82 L. Ed. 872, 58 S. Ct. 578; *Levering & Garrigues Co. v. Morrin*, 71 F. (2d) 284; *Fenske Bros. v. Upholsterers' International Union*, 358 Ill. 239, 193 N. E. 112, 97 A. L. R. 1318; *Schuster v. International*

*Ass'n of Machinists,* 293 Ill. App. 177, 12 N. E. (2d) 50; *Local Union No. 26 v. Kokomo,* 211 Ind. 72, 5 N. E. (2d) 624, 108 A. L. R. 1111; *Wallace Co. v. International Ass'n of Mechanics,* 155 Ore. 652, 63 P. (2d) 1090; *American Furniture Co. v. I. B. of T. C. & H. of A., Chauffeurs, etc.,* 222 Wis. 338, 268 N. W. 250, 106 A. L. R. 335; *Senn v. Tile Layers Protective Union,* 222 Wis. 383, 268 N. W. 270, 872 (affirmed 301 U. S. 468, 81 L. Ed. 1229, 57 S. Ct. 857); *Dehan v. Hotel & Restaurant Employees etc.,* 159 So. (La. App.) 637.

The latest decision of the supreme court of the United States upholding the Norris-LaGuardia Act was handed down November 18, this year. *Milk Wagon Drivers' Union v. Lake Valley Farm Products,* 311 U. S. 91, 61 S. Ct. 122. Of picketing growing out of an attempt to unionize nonunion employees of vendors and peddlers of milk in Chicago, the court said:

"As the vendor system made increasing inroads on the business of the union dairies, the opposition of the defendant union became more active. Its members insisted that the vendor system constituted unfair competition, depressing labor standards. To combat it, they attempted—as the District Court found from the facts—to unionize the employees and vendors of the dairies utilizing this plan. Not succeeding in this attempt, in 1934 they began picketing the so-called cut-rate stores. The picketing was carried on almost continuously until this suit was filed. Pickets usually carried placards denouncing cut-rate stores as unfair to the A. F. of L. local. . . .

"In his report, the master found, in the language of the Norris-LaGuardia Act, that the case arose out of and involved a labor 'dispute between one or more employers or associations of employers and one or more employees or associations of employees,' all of whom were engaged in the same industry, trade, craft or occupation, namely, the milk industry; that defendants had attempted for some time to unionize the em-

ployees of the plaintiff dairies and of other cut-rate dairies, and that the picketing was an effort on the part of the defendant to compel the vendors and wagon drivers of the dairies to join the defendant union for the purpose of improving working conditions and wages of vendors; that the working hours of the plaintiff dairies' employees were longer and the wage scales lower than the union standards. The District Court adopted the findings of the master, and made further findings of its own. . . .

"The District Court not only found that a labor dispute existed, but also found that it was without jurisdiction to grant an injunction because the requirements of the Norris-LaGuardia Act had not been met. . . . We agree with the District Court that this case grows out of a labor dispute. Since the requirements of the Norris-LaGuardia Act have not been met, the court did not have jurisdiction to grant an injunction . . . ."

Our own cases construing the act are in irreconcilable conflict. In the first case in which the statute was challenged (*Safeway Stores v. Retail Clerks' Union,* 184 Wash. 322, 51 P. (2d) 372—the case upon which the majority mainly rely for the decision of the instant case), the italicized clause in § 13 above quoted was literally read out of the act. That construction of the statute was accepted as correct in the cases of *Adams v. Building Service Employees etc. Union,* 197 Wash. 242, 84 P. (2d) 1021; *Fornili v. Auto Machanics' Union,* 200 Wash. 283, 93 P. (2d) 422; *United Union Brewing Co. v. Beck,* 200 Wash. 474, 93 P. (2d) 772; and *Bloedel Donovan Lbr. Mills v. International Woodworkers,* 4 Wn. (2d) 62, 102 P. (2d) 270. (In passing, it may be said that approval of the doctrine of the *Safeway Stores* case was wholly unnecessary to the decision of the case last cited.)

In the meantime, however, in *Kimbel v. Lumber & Saw Mill Workers Union,* 189 Wash. 416, 65 P. (2d)

1066, the court denied its power to enjoin peaceful picketing, saying:

"As stated in the opinion of this court in the case of *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P. (2d) 397, working men have 'the right to cease work, or to strike, or in the lawful way to call a strike and persuade others to join them.' The right of labor unions to convey to the public at large and persons specially interested information to the effect that a certain business or plant has been by labor unions declared unfair has been several times upheld."

Again, in *Yakima v. Gorham,* 200 Wash. 564, 94 P. (2d) 180, we held an ordinance prohibiting peaceful picketing void because it conflicted with the *public policy of this state as declared by the legislature in Laws of 1933 Ex. Ses., chapter 7.* But now again, by its decision in this case, the court holds that the public policy of the state so declared by the legislature in that act is of no avail, because it encroaches upon the constitutional power of this court to issue injunctions!

But passing from the statute and our decisions construing it, we come to the question of paramount importance in the instant case: Whether this court is warranted in disregarding the decisions of the supreme court of the United States holding that peaceful picketing is a right guaranteed by the Federal constitution as an incident to the right of assembly and free speech. It may be conceded that this court is not *bound* by a decision of the supreme court of the United States construing a congressional act similar to or identical with a state statute. *Parrish v. West Coast Hotel Co.,* 185 Wash. 581, 55 P. (2d) 1083. A decision of the supreme court of the United States in such case carries no more *controlling* force than does a decision of the court of last resort of a sister state construing a state statute similar to or identical with a statute of our own.

But that is not the question here. It is not a ques-

tion of *statutory construction* with which we are confronted, but rather a question of *constitutional interpretation.* The constitution of the United States is the supreme law of the land. And when the supreme court of the United States speaks on that subject, it speaks with finality. Its decisions interpreting the constitution and defining the rights of citizens under it are binding not only upon all the courts of all the states, but upon all the people of the United States. Upon the subject here presented, the supreme court has spoken repeatedly and in no uncertain terms. It has held that citizens have the constitutional right to assemble on the streets and publicize their grievances (*Hague v. Committee for Industrial Organization,* 307 U. S. 496, 83 L. Ed. 1423, 59 S. Ct. 954); that, as an incident to that constitutional right, they have the right to engage in peaceful picketing, even though no labor dispute exists (*New Negro Alliance v. Sanitary Grocery Co.,* 303 U. S. 552, 82 L. Ed. 1012, 58 S. Ct. 703); that union members have the right to make known their grievances "without special statutory authorization by a State, . . . for freedom of speech is guaranteed by the Federal Constitution." (*Senn v. Tile Layers Protective Union,* 301 U. S. 468, 81 L. Ed. 1229, 57 S. Ct. 857); that no municipality by ordinance (*Carlson v. California,* 310 U. S. 106, 84 L. Ed. 1104, 60 S. Ct. 746), nor any state by legislative enactment (*Thornhill v. Alabama,* 310 U. S. 88, 84 L. Ed. 1093, 60 S. Ct. 736) can abrogate that right.

The majority have undertaken to distinguish and minimize the force of the last two decisions cited. Of this effort to distinguish and minimize, I shall merely refer to the recent decision of the supreme court of Oregon in which those decisions are accepted as the finality of constitutional interpretation. Impelled by those decisions, that court held unconstitutional initi-

ative legislation prohibiting peaceful picketing adopted by the people of Oregon at the general election in 1938. *American Federation of Labor v. Bain,* 106 P. (2d) (Ore.) 544, decided in the supreme court of the state of Oregon October 22, 1940. Of these cases, the court observed:

"These cases may be said to be the culmination of a series of recent decisions by the Supreme Court in which the rights of individuals to be protected in freedom of speech, of the press and of assemblage, were vindicated as against state action found to impair those rights. . . .

"By the decisions in the *Thornhill* and *Carlson* cases it is now established that picketing as an incident to a labor dispute is, at least in some of its phases, an exercise of the right of freedom of speech. . . .

"The Supreme Court has, in the cited cases, announced a broad construction of the guarantees of freedom of speech and the press, and, applying this conception to laws aimed at picketing, has held that publicizing the facts of a labor dispute in a peaceful way through appropriate means, whether by pamphlet, by word of mouth or by banner, is within the liberty of communication which is secured to every person by the Fourteenth Amendment against abridgment by a state. It has held, further, that the exercise of this right may not be abridged by proscribing it at the scene of a labor dispute. It has declared the streets of a city appropriate places for the dissemination of views on matters of public moment, and that labor controversies come within that category. . . .

"It follows that the very type of conduct which the Supreme Court held in the *Thornhill* and *Carlson* cases to be protected by the Fourteenth Amendment, is denounced by the Oregon statute . . .

". . . as the prohibitions upon picketing in Sections 1 and 3 of the statute now under consideration are such as to come within the condemnation of that character of legislation by the Supreme Court of the United States, we are compelled to declare those pro-

visions void as in contravention of the Fourteenth Amendment of the Federal Constitution."

The supreme court of California also has just held, in conformity with the decisions of the supreme court of the United States in the *Carlson* and *Thornhill* cases, that peaceful picketing is a right incident to the right of free speech guaranteed by the constitution of the United States. *McKay v. Retail Automobile Salesmen's Local Union No. 1067,* 106 P. (2d) (Cal.) 373.

If the people of a state cannot abrogate the right of peaceful picketing by initiative legislation, surely no court may proscribe the right by injunction. It seems to me that, if the constitution of the United States is to endure as the supreme law of the land, it is quite essential that this court and all other state courts accept and abide by the interpretation placed upon it by the supreme court of the United States.

I dissent.

BEALS, J. (dissenting)—While in my opinion the restraint of picketing at the place of business of an employer with whom a labor organization or any other group has some disagreement violates no right of free speech or free assembly, under the Federal constitution, in so far as the situation here presented is concerned, I feel bound by some recent decisions of the supreme court of the United States, whose duty it is, under the constitution, to interpret that document; and I accordingly dissent from the conclusion reached by the majority.

DRIVER, J. (dissenting)—The constitution of the United States is the highest law of the land, and the ultimate authority in its interpretation is the supreme court of the United States. In my opinion, the recent decisions of that court cited in the dissenting opinion of Chief Justice Blake, particularly the *Thorn-*

*hill* and *Carlson* cases, hold, in effect, that peaceful picketing of the character here under consideration is a valid exercise of the fundamental rights of freedom of speech and freedom of the press secured by the Federal constitution against abridgment by the states. It seems to me that such decisions should be regarded as controlling in the instant case, and I therefore dissent.

ON PETITION FOR REHEARING.

[*En Banc.* February 5, 1941.]

PER CURIAM.—Since the filing of the opinion in this case, respondents have filed a petition for rehearing, in which our attention is called to the fact that, in the majority opinion, we erroneously remanded the case to the trial court, "with instruction to enter judgment permanently enjoining respondents, their agents or employees, from picketing appellants' places of business." It is apparent that the objection regarding the instruction to the trial court is properly made, and the last paragraph of the majority opinion will therefore be corrected to read:

"The judgment of the trial court is reversed, with instruction to enter an order overruling respondents' demurrer to appellants' complaint."

In all other respects, the petition for rehearing will be denied.

MILLARD, J. (dissenting)—I can not agree to a denial of the petition for rehearing at this time.

We have been informed that December 13, 1940, the day following the publication of our opinion, *Meadowmoor Dairies v. Milk Wagon Drivers' Union,* 371 Ill. 377, 21 N. E. (2d) 308, and *Swing v. American Federation of Labor,* 372 Ill. 91, 22 N. E. (2d) 857, were argued in the supreme court of the United States. Those two cases, upon which we relied, presented the question

whether the right of freedom of speech was violated by injunctions restraining labor unions from picketing, which is the same question presented in the case at bar.

We should not dispose of respondents' petition for rehearing until the United States supreme court has decided the two cases cited above, as that decision will be determinative of the question now before us. In any event, we should withhold the remittitur for twenty days in order that respondents may have sufficient time in which to apply to the supreme court of the United States for a review of our opinion.

BLAKE, J., concurs with MILLARD, J.