[1] Reported in 207 P.2d 221.
This is an appeal from an order the effect of which is to restrain the picketing, pendente lite, of the M.V. "Argo." Basically, this is a jurisdictional dispute between two locals of the National Organization of Masters, Mates and Pilots of America, hereinafter called the "national organization."
Seattle Local 6, one of the respondents, hereinafter called "Local 6," claims jurisdiction
". . . over the licensed deck officers manning all types of vessels navigating predominently ub Puget Sound and adjacent inland waters, British Columbia and Alaska, which includes the operations of such vessels as the M.V. "ARGO" . . . in Alaska waters."
West Coast Local 90, one of the appellants, hereinafter called "Local 90," claims exclusive jurisdiction over licensed deck officers on vessels engaged in ocean or coastwise (including Alaska) voyages. *Page 677 
Pacific Navigation Trading, Inc., plaintiff below and one of the respondents here, hereinafter called the "company," owns the M.V. "Argo," a small tanker. The company entered into a contract with Local 6 covering the ship's operations in both Puget Sound and Alaska waters.
Local 90 and the president of the national organization admit the existence of the contract between Local 6 and the company, but assert that the jurisdiction of Local 6 is limited to inland waters and that it has no jurisdiction over operations in Alaska waters and had no authority to make such a contract.
This would seem to be a situation in which the national organization should require Local 6 to release the company from the agreement, if, as the national organization contends, Local 6 had no authority to enter into an agreement covering voyages in Alaska waters. Like claims of national sovereignty, ordinarily regarded as nonjusticiable, such jurisdictional disputes seem to be controversies without a tribunal. See Inter-Union Disputes in Search of a Forum, 49 Yale L. Jour. 424.
It is not clear just why the national organization should try to put the responsibility for repudiating the agreement with Local 6, together with any liability in consequence thereof, upon the company. Nevertheless, the president of the national organization, writing to the company, said:
"We hereby notify you again that the agreement which you have signed on June 29, 1948, with the representative of Local No. 6 for the tanker Argo, for wages and working conditions on off-shore, coastwise and Alaska towing, must be repudiated and renegotiated with representatives of West Coast Local 90. . . ."
The company made it clear that it was willing to negotiate with Local 90 if it was not bound by its agreement with Local 6. Nevertheless, Local 90 picketed the "Argo" to compel the company to repudiate its agreement with Local 6 and to negotiate a new agreement with Local 90 covering voyages in Alaska waters.
It is alleged in the complaint and stated in affidavits by the company's officers, and not denied, that the presence of *Page 678 
the pickets prevented the agents and employees of the company from going aboard the "Argo" and performing the functions necessary to the operation and unloading thereof, and that the engineers employed by the company and necessary to the operation and functioning of the ship were prevented by the picket line from going aboard to perform their duties.
On page 36 of their brief, appellants urge three reasons in support of their contention that picketing should not have been restrained pendente lite:
"(a) A labor dispute existed and exists between appellants and plaintiff [respondent company] and the injunction prohibits lawful picketing in connection with said dispute;
"(b) Plaintiff has been unfair in its dealings with appellants and appellants have the right to publicize that fact.
"(c) Said order violates appellants' constitutional rights under the Fourteenth and First Amendments to the Federal Constitution."
We will first discuss reasons "(a)" and "(c)."
(a) Appellants urge that the trial court erred in holding that there was no labor dispute. It is conceded that, when the picketing began on August 30, 1948, no members of Local 90 were working for the company. Appellants urge, however, that, when Local 90 made its first demand for recognition as the exclusive bargaining agency for deck officers on Alaska voyages, there were members of that local on the "Argo"; that members of Local 90 continued as deck officers on the "Argo" for some time thereafter; and that the company resorted to the expedient of discharging them so that it might be said that there was no labor dispute.
The record does not support appellants' contention that Local 90 members were discharged. It is established that two members of Local 90 were left "on the beach" on one occasion when the "Argo" departed suddenly for Alaska. Whether that was premeditated or was due to misunderstanding is a hotly controverted, but we believe immaterial, matter, since the two members referred to were replaced *Page 679 
by Local 6 with two other members of Local 90 who thereafter terminated their employment voluntarily.
We are further convinced that, under the peculiar circumstances here existing, Local 90 never represented any of the deck officers on the "Argo" for the purpose of collective bargaining with the company. The company, from the time it began operating the "Argo," was under a contractual obligation — at first oral and later written — to secure its deck officers through Local 6; and every such officer it employed was sent to it by Local 6. Some of these officers were members of Local 90, but they were cleared through Local 6, and could not have secured such employment except through Local 6. They accepted employment through Local 6, worked under the contract between Local 6 and the company, and were paid in accordance therewith. The circumstances of their employment constituted tacit recognition that Local 6 was the proper exclusive bargaining agency with the company for the positions Local 6 was filling.
At the time the picketing by Local 90 began, and at all times thereafter, every deck officer on the "Argo" was a member of Local 6. It was entitled to be and was the exclusive bargaining agency for such deck officers, and a contract between it and the company was in full force and effect.
[1, 2] Under the circumstances, there was no labor dispute between the picketing local and the company. Bloedel DonovanLbr. Mills v. International Woodworkers of America, 4 Wn.2d 62, 102 P.2d 270; Swenson v. Seattle Central Labor Council,27 Wn.2d 193, 177 P.2d 873, 170 A.L.R. 1082. In each of those cases, a union had been officially certified as the exclusive bargaining agency, by the national labor relations board. When another union picketed to force the employer to negotiate with it, in violation of the law, it was held that there was no labor dispute between the company and the picketing union and that the employer was entitled to injunctive relief, the other conditions precedent to such relief being present.
Certification by the national labor relations board gives official recognition to an established fact. Here we have *Page 680 
the established fact that Local 6 was the exclusive bargaining agency for the deck officers employed by the company when the picketing began, because it is undisputed that they were all members of that local. It was that fact, and not the certification thereof, which justified the company in recognizing Local 6 as such exclusive bargaining agency.
The presence of the other conditions precedent to such relief being alleged and not denied, the company here, as in theBloedel Donovan and Swenson cases, was entitled to injunctive relief when Local 90, of which no company employee was a member, picketed to force the company to recognize and negotiate with it in violation of the existing contract and the law relating to agencies for collective bargaining. We recognize that any such contract is subject to the disability of termination should there be a change in the proper bargaining representative; but, while the contract is in effect, the parties who have a legal right to make it and live under it should be granted a protective injunction, where that relief is necessary, against third persons who sustain no relation to either the contract or the parties thereto. Carpenters Joiners Union of America v. Ritter'sCafe, 138 S.W.2d (Tex.Civ.App.) 223; Borden Co. v. LocalNo. 133 of International Brotherhood of Teamsters, 152 S.W.2d (Tex.Civ.App.) 828.
Unless and until Local 90 establishes that it represents some employees of the company, it is, as the trial court said, "a mere volunteer here seeking to inflict its will upon plaintiff [respondent company], and incidentally upon Local 6." The trial court was correct in holding that there was no labor dispute between the company and Local 90, within the purview of Rem. Rev. Stat. (Sup.), §§ 7612-1, 7612-13 [P.P.C. §§ 695-1, -25].
(c) Local 90 seeks to justify its picketing by saying that its sole purpose "has been and will be to apprise third persons of the fact that there was and is in existence a dispute" between Local 90 and the company, and that Local 90 considers the company unfair to it. Such was the statement of the business agent of Local 90 in an affidavit made on September *Page 681 
13, 1948. A few days earlier, he had said in another affidavit:
"Picketing was instituted because said plaintiff [respondent company] has at all times failed and refused and still fails and refuses to negotiate in good faith with Local 90 concerning the terms and conditions of employment of deck officers of said vessel while said vessel is engaged in the Alaska trade or other coastwise trade and has failed and refused to enter into any agreement with said Local 90 respecting the employment of deck officers aboard said vessel in such trade and as herein stated has violated its commitments with said Local 90 and said National Organization."
Based upon the affidavit of September 13th and the cases ofAmerican Federation of Labor v. Swing, 312 U.S. 321,85 L.Ed. 855, 61 S.Ct. 568, and Cafeteria Employees Union v. Angelos,320 U.S. 293, 88 L.Ed. 58, 64 S.Ct. 126, appellants urge that the order restraining picketing pendente lite in this case is inescapably violative of their constitutional guaranty of freedom of speech.
[3] Although the decisions of the supreme court of the United States cited by appellants hold that picketing is an exercise of the right of free speech, they nowhere hold that the right is absolute. For a very recent recognition of the fact that it is not absolute, see Kovacs v. Cooper, 336 U.S. 77, 93 L.Ed. 379,69 S.Ct. 448. In California, it has repeatedly been held that the boundaries circumscribing picketing as an exercise of free speech are that the object must be proper, and that the means must be lawful. James v. Marinship Corp., 25 Cal.2d 721,155 P.2d 329, 160 A.L.R. 900; Hughes v. Superior Court, 32 Cal.2d 850,198 P.2d 885. See, also, our own decisions inShively v. Garage Employees Local Union No. 44, 6 Wn.2d 560,108 P.2d 354, and Hanke v. International Brotherhood ofTeamsters, ante p. 646, 207 P.2d 206.
The objective of the picketing union, as we have already pointed out in our consideration of the question of the existence or nonexistence of a labor dispute, was to force the company to recognize it and negotiate with it in violation of the existing contract and the law relating to exclusive *Page 682 
agencies for collective bargaining. This was not a proper objective.
There is no suggestion that any information conveyed by the pickets concerning the differences between Local 90 and the company persuaded the engineers and other employees of the company not to go aboard the "Argo"; but it is stated, and not denied, that it was the presence of the picket line which prevented them from going aboard to perform their duties. It was the predominantly coercive, and not the persuasive, function of the picket line by which Local 90 tied up the operation of the "Argo" in an effort to compel the company to violate the law and break its contract. As we said in Swenson v. Seattle CentralLabor Council, supra:
"The United States supreme court has . . . established this rule: Peaceful picketing is an exercise of the right of free speech. Organized labor has the right to communicate its views either by word of mouth or by the use of placards. This is nothing more nor less than a method of persuasion. But when picketing ceases to be used for the purpose of persuasion — just the minute it steps over the line from persuasion to coercion — it loses the protection of the constitutional guaranty of free speech, and a person or persons injured by its acts may apply to a court of equity for relief."
For an excellent statement as to the distinction between the function of a picket line as a disseminator of information (somewhat naively assumed by some courts to be its only purpose) and its coercive and compulsive function, see Lebaron v.Printing Specialities Paper Converters Union, 75 F. Supp. 678, and the same case on its affirmance (December 13, 1948) by the ninth circuit court of appeals, 171 F.2d 331.
The picketing here was beyond the bounds, both as to objectives and as to means, within which a picketing union should be protected under the constitutional guaranty of freedom of speech.
Having concluded, on the record now before us, that no labor dispute existed and that there was no violation of appellants' *Page 683 
constitutional right of free speech, there remains for consideration only "(b)," supra.
(b) The charge that the company has been unfair in its dealings with Local 90 is based primarily upon the fact that the officers of the company, subsequent to the execution of its contract with Local 6, signed the following letter:
"To Whom it may concern:
"This is to confirm that the Pacific Navigation Trading Inc., will abide by the decision of the National Organization of Masters, Mates and Pilots, relative to jurisdiction on bargaining for wages and conditions for the Deck Officers of the M.V. ARGO while operating inland and trips to Alaska or Coastwise.
"Whatever is agreed as to wages and conditions will be retroactive to June 30th, 1948."
It may be conceded that, had this letter not been signed and delivered to Local 90, the local would have forced a "showdown" on the jurisdictional question at an earlier date.
The president of the national organization later advised the company and the two locals that the matter had been submitted to the national executive committee, and that it supported Local 90 in its contention that Local 6 had no authority to make any agreement covering operations in Alaska waters. The national organization, somewhat softly, asked the co-operation of Local 6. Local 6, notwithstanding, remained adamant in its claim of jurisdiction.
The company denies any bad faith, and states that its letter was written after the execution of the contract with Local 6 and necessarily with the understanding that the decision of the national organization would be accepted by its locals, and asserts that it is willing to abide by any settlement of the dispute that is acceptable to Local 90 and Local 6.
While the national organization demands repudiation of that contract by the company, and Local 90 seeks to coerce that repudiation with a picket line, no effort has been made by the national organization, so far as the record discloses, to depart from the Fabian policy of persuasion in an effort *Page 684 
to induce Local 6 to withdraw its claim of jurisdiction and to release the company from its contractual obligation.
[4] We could not, on this record, make any finding of bad faith on the part of the company. However, even if Local 90 was justified in regarding the writing of the company's letter "To Whom it may concern" and the subsequent failure to abide by the decision of the national organization as evidence of bad faith, and desired merely to publicize the fact of such bad faith, that desire was not made known to the trial court. Appellants have insisted throughout that they were picketing because of a labor dispute. The possibility or propriety of publicizing something other than a labor dispute, such as the real or fancied bad faith of the company in its relationships with the picketing union, is not before us for determination.
Everything that has been said herein with reference to the facts is on the basis of the present record, which is made up entirely of affidavits, and is in no way binding upon the trial court when this cause comes on for hearing on the merits. We are merely saying that, on the record now before us, the trial court would be justified in finding the facts to be as we have indicated; and we are persuaded that, if those were the facts, the trial court did not abuse its discretion in exercising its general equity powers to preserve the status quo of all parties concerned until a hearing could be had on the merits. The order appealed from is affirmed.
JEFFERS, C.J., STEINERT, SIMPSON, SCHWELLENBACH, and GRADY, JJ., concur.
BEALS and ROBINSON, JJ., concur in the result.
MALLERY, J., dissents. *Page 685