[No. 27845. *En Banc.* May 6, 1940.]

BLOEDEL DONOVAN LUMBER MILLS, *Respondent,* v. INTERNATIONAL WOODWORKERS OF AMERICA, LOCAL No. 46, *et al., Appellants.*[1]

[1]Reported in 102 P. (2d) 270.

*Stevenson & Gershon,* for appellants.

*W. H. Abbott, Harold Lant,* and *McMicken, Rupp & Schweppe,* for respondent.

JEFFERS, J.—This is an appeal by defendants, International Woodworkers of America, Local No. 46; William Wallace, individually and as its president; Frank Gerber, individually and as its vice-president; Matt Nelson, individually and as its financial secretary; Harry Lindsay, individually and as its recording secretary; John Doe, a member thereof; and Richard Roe, from a judgment granting a temporary injunction, whereby defendants were enjoined from picketing the plants of plaintiff, Bloedel Donovan Lumber Mills.

Respondent corporation is engaged in the operation of a general lumber and sawmill business, in Whatcom county, Washington, including in its operation a cargo mill, crib boom and box factory, a sash and door fac-

tory, a Larson Mill and log dump, and a logging camp. A substantial portion of respondent's products are sold in interstate commerce.

The appellant International Woodworkers of America, Local No. 46, to which we shall hereinafter refer as Local 46, is a labor organization, affiliated with the Committee of Industrial Organization, and the other appellants are officers and members thereof.

Lumber and Sawmill Workers Union, Local No. 2667, chartered by United Brotherhood of Carpenters and Joiners of America, and affiliated with the American Federation of Labor, is a labor organization, and will hereinafter be referred to as Local 2667.

Prior to March, 1939, respondent's mills had been shut down for about nine months, with the exception of some three or four weeks. During that time, a bitter controversy had existed between Local 46 and Local 2667, as to which union was the proper collective bargaining agency of all respondent's employees. Apparently in order to settle this controversy, the dispute was submitted to the National Labor Relations Board, and an election was held by secret ballot, under the supervision of the regional director of the board, as provided by the National Labor Relations Act, 29 U. S. C. A. (Sup.), §§ 151-166 (49 Stat. 449 to 457). The election resulted in a majority of the employees of respondent voting to be represented by Local 2667, and this result was certified by the board on April 10, 1939, in case No. R-695, entitled "In the Matter of Bloedel Donovan Lumber Mills and Columbia Valley Lumber Co. and International Woodworkers of America, Local No. 46."

On April 17, 1939, respondent entered into a working agreement with Local 2667, as the sole collective bargaining agency for all employees in the units covered by the certification of April 10th. The agreement

provides, among other things, that respondent will employ only members of Local 2667 to the extent that they are available and competent. The agreement further outlines a method to be followed for collective bargaining, and contains provisions relative to hours, wages, and working conditions—in fact, it covers generally the field of labor relations between respondent and its employees. Paragraph XVI of the agreement specifically provides that no strike or job action of any kind shall be caused or sanctioned by the union, or any of its members, until after the provisions of article V have been carried out (this being the paragraph relative to collective bargaining), and in no event shall a strike occur without approval by ballot of a majority of the union members employed by the company, and voting on a strike shall be conducted by the union members of the crew.

This agreement, at all times since its execution, has been, and is now, in full force and effect.

About October 2, 1939, respondent, desiring to expand its operations, submitted to both Local 46 and Local 2667 a proposal for such operations. It was the desire of respondent, as shown by this proposal, to not only increase the day shift at the cargo mill, but also to put on a night shift. Paragraph 2 of this proposal provides:

"All parties concerned recognize the validity of the existing contract between Local 2667 of the A. F. of L. and the company."

Paragraph 3 provides:

"Men who are not now members of Local 2667 who are entitled to go to work under the terms of this proposal will sign membership applications with Local 2667 and take out working permit cards before going to work, all in good faith."

Paragraph 4 provides in part:

"Men will go to work in the various plants in accordance with their seniority rating as per the company lists at the different plants as of or immediately preceding July, 1938, with no exceptions."

The proposal was ratified by both Local 46 and Local 2667, and pursuant to the proposal as ratified, respondent increased its operations, beginning October 9, 1939, and additional men were put to work.

A number of the men who went to work after the increased operations had not theretofore been members of Local 2667, but these men, apparently recognizing the necessity of complying with the working agreement of April 17th and the proposal, applied for membership in Local 2667, on application blanks wherein the applicant recognized Local 2667 as the sole collective bargaining agent to act for applicant in all matters pertaining to rates of wages, hours, and other conditions of employment, and wherein it was further provided that the applicant terminated membership in any other union and rescinded the authority of any other union, committee, or person, to represent him.

From the testimony of J. N. Donovan, vice-president and general manager of respondent company, it appears that, for the first few days after the increased operations started, there seemed to be some uncertainty relative to the provisions of the agreement of October 2nd, as to the seniority rights between night and day shift men, and some complaints were made relative to the right of certain men to day shift jobs. Mr. Wallace, president of Local 46, made complaint to Mr. Donovan about this matter. However, no complaint was ever made by or through Local 2667. The misunderstanding as to what jobs the men were entitled to, seems to have been caused by the fact that,

shortly prior to July, 1938, the date fixed in the agreement of October 2nd as the date for determining the seniority rating of the men, the night shift had been discontinued, and some of the men on the night shift, with seniority rights, had been transferred to day shift jobs.

On October 14th, a meeting was held between the company and representatives of both Local 2667 and Local 46, at which time respondent explained that the policy would be to put back on the night shift the men who had last worked on the night shift when it was operating, and to put back on the day shift the men who had last worked on the day shift, at the time the mill was running a night and day shift. Mr. Donovan further testified that, after this meeting, no further complaints were made to him, and he knew of none being made.

On October 19th and 20th, Local 2667 notified respondent by letters that the working permits of a number of men had been revoked, and asked respondent to lay these men off, pending further action by that union. These permits were revoked for the reason, as appears from the affidavit of R. N. Inge, president of Local 2667, that the men had failed to complete membership in Local 2667, in accordance with the terms of the agreement of April 17th and the proposal of October 2nd. Respondent, acting upon the above notice and request, laid off these men, all of whom were or had been members of Local 46.

About twelve o'clock, Sunday night, October 22nd, Mr. Wallace, president of Local 46, called Mr. Donovan on the telephone and requested that Mr. Donovan meet with a committee of Local 46, to discuss certain grievances of the men whose working permits had been revoked, and also to discuss the claimed failure of respondent to comply with seniority requirements of the

proposal of October 2nd. Mr. Donovan refused to meet with this committee of Local 46, for the reason that it was not the proper collective bargaining agency. Local 46 thereafter voted to strike, and upon the following day, October 23rd, commenced to picket respondent's plants. The men who by this record claimed to have made complaints, participated in the strike vote as members of Local 46.

This action was immediately instituted by respondent to obtain a temporary restraining order and temporary injunction. Upon the filing of the complaint, a temporary restraining order was issued, and after a hearing, in which affidavits were received and oral testimony taken, a temporary injunction was granted.

In addition to the facts already set forth, it further appears, from the affidavit of R. N. Inge, president of Local 2667, that all the employees of respondent in its operations are satisfied with the hours, rates of pay, and terms of employment, and that no labor dispute exists between respondent and Local 2667, the exclusive bargaining agency for the employees of respondent.

It does not appear that respondent has ever refused to discuss grievances with individual employees desiring to discuss such matters.

John McMahon, general mill superintendent of respondent, testified that several complaints had been made to him relative to seniority rights; that there were probably a dozen such complaints made, and that adjustments had been made in all cases; that none of the complainants had ever indicated to him that they were dissatisfied with such adjustments.

Mr. Wallace, president of Local 46, testified that, subsequent to October 9th, he had received between twenty-five and fifty complaints from members of Local 46, relative to working conditions; that some of the

complaints were over seniority rights, and some were based upon the fact that certain members had not been put back to work; that these complaints were the basis of the strike vote.

We have, then, this situation presented by the undisputed evidence: Local 2667 has been certified by the National Labor Relations Board as the sole collective bargaining agency for the employees of respondent; respondent has a closed shop agreement with Local 2667, which, among other things, provides that membership in Local 2667 shall be a prerequisite to employment in respondent's operations; a strike is called by Local 46, and respondent's plants are picketed by that organization.

Appellants do not question the jurisdiction of the National Labor Relations Board to make the certificate as to the bargaining agency; neither do they question the right of respondent and Local 2667 to enter into a closed shop agreement; but they contend that there is a labor dispute involved herein as the result of the failure of respondent to honestly and in good faith comply with the following provision in the proposal of October 2nd:

"Men will go to work in the various plants in accordance with their seniority rating as per the company lists at the different plants as of or immediately preceding July, 1938, with no exception,"

and that the trial court was therefore without jurisdiction, under our anti-injunction statutes.

On the other hand, respondent contends, first, that the proceedings of the National Labor Relations Board supersede the anti-injunction act, so far as the question here involved is concerned; second, that the proceedings of the National Labor Relations Board render legally impossible a labor dispute of the character contemplated by the anti-injunction act; third, that,

even if it be conceded, for the sake of argument, that a labor dispute of the character contemplated by our anti-injunction act exists, nevertheless this court, under decisions previously rendered, should affirm the granting of the injunction; fourth, that the court, in the light of all the circumstances shown by the record, should in no event disturb the temporary injunction.

We are of the opinion appellants have failed to take into consideration that, at the time the proposal of October 2nd was presented and ratified, there had been a determination by the National Labor Relations Board of an exclusive bargaining agency, and a working agreement entered into between respondent and that agency, and that the proposal of October 2nd expressly recognized those facts.

Without deciding to what extent, if at all, the Wagner act (29 U. S. C. A. (Sup.), §§ 151 to 166) has superseded our anti-injunction act, we are clearly of the opinion that, where interstate commerce is involved, the National Labor Relations Board has been given exclusive initial jurisdiction to determine the appropriate and lawfully selected bargaining unit for employees. *Fur Workers Union, Local No. 72 v. Fur Workers Union, No. 21238*, 105 F. (2d) 1. That a situation such as here presented sufficiently affects interstate commerce to make the Wagner act applicable, has been determined in *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U. S. 1, 81 L. Ed. 893, 57 S. Ct. 615, 108 A. L. R. 1352. Appellant union invoked the aid of the National Labor Relations Board to settle its difficulties and obtained an adverse decision, and we think it must be bound by that decision.

Continuing to act under the authority of the Wagner act, and especially under § 158, subd. (3), which states:

*"Provided,* That nothing in this chapter, or in sections 701 to 712 of Title 15, or in any code or agreement

approved or prescribed thereunder, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this chapter as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective bargaining unit covered by such agreement when made,"

respondent and Local 2667 entered into a closed shop agreement.

While it is true the proposal of October 2nd was submitted to Local 46, as well as Local 2667, this proposal expressly recognized the certification by the board and the closed shop provision contained in the working agreement of April 17th, so that we are unable to see that, even after the ratification of the proposal, appellant union was legally in any position to claim the right to represent employees of respondent as the bargaining agent, or that any of the men who are here contending that there is a labor dispute, being members of Local 46 and not members of Local 2667, can be recognized as employees of respondent. Further, and in passing, it may be stated that none of the individuals here contending that there is a labor dispute attempted to follow the procedure outlined in the working agreement of April 17th, to have adjusted whatever complaints they may have had.

█ That no labor dispute can exist between a minority union and an employer, under facts such as disclosed by this record, has been decided in *Oberman & Co. v. United Garment Workers of America*, 21 Fed. Supp. 20. The following cases, while not expressly so holding, strongly intimate that, where the National Labor Relations Board has determined the exclusive bargaining agency, as provided in the Wagner

act, there cannot thereafter be any labor dispute between the employer and the minority union: *Fur Workers Union, Local No. 72 v. Fur Workers Union No. 21238, supra; Donnelly Garment Co. v. International L. G. W. Union,* 23 Fed. Supp. 998; *Lund v. Woodenware Workers Union,* 19 Fed. Supp. 607. That an employer has a legal right to deal exclusively with the agency found by the National Labor Relations Board to represent a majority of the employees, has been determined in *Grace Co. v. Williams,* 20 Fed. Supp. 263; *Cupples Co. v. American Federation of Labor,* 20 Fed. Supp. 894; and *National Labor Relations Board v. Jones & Laughlin Steel Corp., supra.*

While we do not wish to be understood as holding that any individual employee, or group of employees, may not at any time present grievances to respondent, in the manner provided in the working agreement, we are firmly of the opinion that Local 46 has no legal standing, in so far as respondent is concerned, either to insist on negotiating with respondent relative to the claimed grievances of some of its members, or to legally authorize the picketing of respondent's plants.

Certainly, if there is to be economic peace and an orderly adjustment of the question of who, as between two contesting unions, shall be the exclusive bargaining agency of employees, such unions, as well as the employer, should be bound by the certificate made by the National Labor Relations Board, which has, in a case such as here presented, been given by Congress the exclusive initial jurisdiction to make that determination. Also, such contesting unions and their members, as well as the employer, should be bound by agreements made and entered into in good faith, as was the working agreement of April 17th and the proposal of October 2nd, under and pursuant to the provisions of the Wagner act.

It seems to us so apparent that Mr. Donovan was justified in refusing to negotiate with Local 46, that no argument in support of his action is necessary. Local 46 was not the bargaining agency, and it does not appear that any of the men complaining through Local 46 were members of Local 2667; in fact, we think it is apparent that they were not, or they could not have participated in the strike vote, as members of Local 46. It is further apparent that, if any of these men had taken out working permits, their action in voting as members of Local 46 clearly indicated an intention to repudiate any intention of complying with such permits. It does not require much imagination to see the position in which respondent would have been with Local 2667, and possibly in a proceeding brought before the National Labor Relations Board, had respondent failed to abide by the certificate as made and the working agreement entered into with Local 2667.

While no question of certificate by the National Labor Relations Board was involved in the cases hereinafter referred to, we are of the opinion that the contention of appellant union as to its right to picket respondent's plants is also foreclosed by the following cases: *Safeway Stores v. Retail Clerks' Union,* 184 Wash. 322, 51 P. (2d) 372; *Adams v. Building Service Employees International Union,* 197 Wash. 242, 84 P. (2d) 1021; *Fornili v. Auto Mechanics Union,* 200 Wash. 283, 93 P. (2d) 422.

We are further of the opinion that the cases last cited are authority for the rule that picketing must not only be peaceful, but lawful; and clearly, in our opinion, the picketing in the instant case, while it may have been peaceful, in that no acts of violence were shown, was not lawful. We cannot help but be impressed with the fact that, in its final analysis, this case is in reality an attempt by Local 46 to interfere with

and do away with the closed shop agreement with Local 2667. As bearing on this matter, we have the testimony of Mr. Donovan to the effect that he was informed by Mr. Wallace, president of Local 46, and a Mr. Hoke, the business agent of Local 46, that there would be no peace until the closed shop agreement was broken, and that this was the real reason for the strike. There can be no doubt, had the picketing continued, respondent would have been compelled to close its plants, and that very serious damage would have resulted to respondent's business; and not only that, but also the result of such a shut-down would have meant that all the members of Local 2667, employees of respondent, would have been thrown out of employment, regardless of the fact that they are entirely satisfied with conditions existing at respondent's plants, and regardless of the fact that they have in no way participated in the strike or picketing.

Under this condition of the record, we are entirely satisfied that the trial court, under its general equity powers, in order to preserve the *status quo* of all parties concerned, until a hearing could be had on the merits, had jurisdiction to grant a temporary restraining order and a temporary injunction. See *Pacific Tel. & Tel. Co. v. State Tax Commission,* 180 Wash. 673, 42 P. (2d) 420, where, after reference to the rule in regard to the issuance of a temporary injunction, we find the following statement:

"That rule, however, is subject to an exception, in that it will not be rigorously applied when the questions of law or fact to be ultimately determined in the cause are grave and difficult, the injury to the moving party would be immediate, certain and great, and the loss or inconvenience to the opposing party would be comparatively small or insignificant if the writ should be granted."

To the same effect, is *Allison v. Corson,* 88 Fed. 581.

That the legislature of this state has not divested the courts of jurisdiction to issue a temporary restraining order, or to grant a temporary injunction, in a proper case, even though that case may involve or grow out of a labor dispute, see *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P. (2d) 397.

In conclusion, we are of the opinion that, under the facts in this case, no labor dispute was shown to exist between Local 46, or the members thereof, and respondent.

For the reasons herein expressed, the judgment granting the temporary injunction is affirmed.

MAIN, BEALS, STEINERT, MILLARD, ROBINSON, and SIMPSON, JJ., concur.

BLAKE, C. J. (concurring in the result)—I concur in the result on the one ground (stated in the opinion) that, since, pursuant to the Wagner Act, Local No. 2667 had been selected and designated as the exclusive bargaining agency of the employees of respondent, Local No. 46 had no authority to call a strike or establish a picket line.