DURIS et al. v. PHELPS DODGE COPPER PRODUCTS CORPORATION et al.

Civ. No. 884.

United States District Court
D. New Jersey.

Nov. 28, 1949.

Morton Stavis, Newark, N. J., for plaintiffs.

Pitney, Hardin, Ward & Brennan, Donald B. Kipp, Newark, N. J., for Phelps Dodge Copper Products Corp.

Kapelsohn, Lerner, Leuchter & Reitman, Sidney Reitman, Newark, N. J., for International Union of Electrical, Radio & Machine Workers, etc.

FAKE, Chief Judge.

The issues here arise on motion to strike the complaint for lack of jurisdiction to grant the injunctive relief prayed for.

The pertinent findings of fact are as follows:

1. The plaintiff United Electrical, Radio & Machine Workers of America (hereinafter referred to as UE) is an unincorporated association of seven or more members. It is an international labor union operating in the electrical, radio, machine and allied industries and has chartered local unions in these industries in all parts of the United States. The UE represents employees of numerous employers in these industries throughout the United States who receive substantial amounts of raw materials in interstate commerce shipped from other states and who manufacture substantial amounts of finished products, which they ship and transport in interstate commerce. The aforesaid employees represented by the UE are in an industry or industries affecting commerce as defined in the Labor Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq.

2. On March 6, 1941, "United Electrical Radio & Machine Workers of America, affiliated with the Congress of Industrial Organizations", was certified by the National Labor Relations Board as the exclusive collective bargaining representative of employees within the bargaining unit at the Bayway Division of the defendant Phelps Dodge Copper Products Corporation. See 30 NLRB 621.

3. On September 7, 1946, Phelps Dodge Copper Products Corporation entered into a collective bargaining agreement with United Electrical, Radio & Machine Workers of America, for itself and in behalf of its Local Union 441, in which said corporation recognized said Local 441 as the sole bargaining agent of the employees therein described. By amendments and supplements thereto, said collective bargaining agreement was extended to May 1, 1950.

4. Prior to November 2, 1949, United Electrical, Radio & Machine Workers of America was an international labor organization affiliated with the Congress of Industrial Organizations, and United Electrical Radio & Machine Workers of America, Local 441, was a local union of said United Electrical, Radio & Machine Workers of America. Said unions are two of the plaintiffs herein.

5. Said Congress of Industrial Organizations, at its annual convention held on November 2, 1949, expelled said United Electrical, Radio & Machine Workers of America, and terminated that Union's affiliation with it pursuant to Article III, Section 6 of the Constitution of said Congress of Industrial Organizations. As a result, the affiliation of United Electrical, Radio & Machine Workers of America, Local 441, with the Congress of Industrial Organizations terminated.

6. Thereafter on or about November 2, 1949, a new international union known as International Union of Electrical, Radio & Machine Workers, CIO, was organized and received a charter from the Congress of Industrial Organizations. Said union is one of the defendants herein.

7. Meetings of the membership of said United Electrical, Radio & Machine Workers of America, Local 441, were held in shifts on November 3 and 4, 1949, for the purpose, among other things, of considering the action to be taken in view of the expulsion from the CIO of the international union with which the local union was affiliated, as aforesaid. The membership, by a vote of approximately 800 to 30, voted in favor of disaffiliating from said United Electrical, Radio & Machine Workers of America and in favor of affiliating with said International Union of Electrical, Radio & Machine Workers, CIO.

8. Thereupon, pursuant to such vote of the membership, a charter was applied for and obtained from said International Union of Electrical, Radio & Machine Workers,

CIO, in the name of International Union of Electrical, Radio & Machine Workers, CIO, Local 441.

9. On November 9, 1949, Phelps Dodge Copper Products Corporation, the employer, upon being informed of the membership vote and the change of affiliation hereinabove referred to, and upon the request of International Union of Electrical, Radio & Machine Workers, CIO, Local 441, executed an agreement with said Local 441 recognizing that its existing collective bargaining agreement "continues to be applicable to Local Union No. 441, now affiliated with International Union of Electrical, Radio & Machine Workers, C.I.O.".

10. On November 18, 1949 Local 441 International Union of Electrical, Radio & Machine Workers, CIO, filed a petition for certification with the National Labor Relations Board requesting the National Labor Relations Board to issue its certification to Local 441 International Union of Electrical, Radio & Machine Workers, CIO, as the sole and exclusive bargaining agent of the employees of defendant company for such protection as is afforded by certification under the National Labor Relations Act.

11. The complaint herein was filed on November 14, 1949. The plaintiffs assert the jurisdiction of this Court under Section 301 of the Labor-Management Relations Act of 1947. They do not allege or claim diversity of citizenship or the existence of a Federal question.

12. The plaintiffs seek a permanent injunction and temporary restraints. No damages for breach of contract are sought or alleged.

13. As against the defendant corporation, the plaintiffs seek an injunction requiring said corporation to give full force and effect to its collective bargaining contract with said United Electrical, Radio & Machine Workers of America, "and in particular directing the said defendant Phelps Dodge Copper Products Corporation for the period of the aforesaid contract to recognize UE and its Local 441 as the sole and exclusive collective bargaining agent for its employees at its Elizabeth, New Jersey plant, to continue for the period of the aforesaid collective bargaining contract to check off the union dues of those employees who have authorized the same and to remit the proceeds to UE Local 441 and to continue for the period of the aforesaid collective bargaining contract to recognize UE and its Local 441 as the collective bargaining agent to administer the grievance procedure under the aforesaid contract and to deal only with UE and its Local 441 in the settlement and adjustment of grievances arising under the aforesaid contract to the full extent permitted by the Labor Management Relations Act as provided in said contract." Plaintiffs also seek an injunction prohibiting and restraining said corporation "from recognizing or dealing in any way with the defendants 'IUE' or 'IUE, Local 441' and further prohibiting and restraining the defendant Phelps Dodge Copper Products Corporation from recognizing or dealing in any way with the individual defendants or any of them or their agents, servants, employees or attorneys as officers or representatives of UE Local 441 or the UE or the 'IUE' or 'IUE, Local 441'".

14. The relief sought against the defendant union and the individual defendants is a prohibitory injunction restraining said defendants from:

(A) Disposing of the assets of Local 441 held either in the name of United Electrical, Radio & Machine Workers of America, or in the name of International Union of Electrical, Radio & Machine Workers, CIO; (B) Taking any steps to have Local 441 secede from United Electrical, Radio & Machine Workers of America; (C) Occupying the union offices and preventing the use of the union offices by United Electrical, Radio & Machine Workers of America; (D) Interfering with United Electrical, Radio & Machine Workers of America as the bargaining agent for the defendant company's employees; (E) Inducing the defendant company not to deal with United Electrical, Radio & Machine Workers of America, or inducing the defendant company to deal with defendants; (F) Entering into any collective bargaining agreement with defendant company.

15. Plaintiffs seek a mandatory injunction directing the defendant union and the individual defendants to render an accounting of the assets of Local 441 United Electrical, Radio & Machine Workers of America.

16. Plaintiffs further seek a determination by the court that defendants hold the lease for the union office under a constructive trust for plaintiffs, and an order requiring defendants to transfer said lease to the plaintiffs.

17. The allegations of the complaint disclose that both the named plaintiff unions and the named defendant unions claim to be the exclusive bargaining agent for the employees in the bargaining unit of the Bayway Division of the defendant corporation.

### Conclusions of Law

Upon an analysis of the facts above stated, it is found that the dispute here is at bottom a dispute as to which of two competing unions, in the sphere of organized labor, shall function under contract with the employer, Phelps Dodge Copper Products Corporation. The question for solution is whether or not this constitutes a labor dispute within the meaning of the Norris-LaGuardia Act, 29 U.S.C.A. 101–115. If it does, and that Act is effective, this Court is without jurisdiction to grant the injunctive relief prayed for in the complaint. There is no prayer for a money judgment. This raises a question as to whether the Labor Management Relations Act of 1947, by virtue of U.S.C.A. Title 29, Sec. 185(a) thereof, tends to repeal the exclusion of injunctive relief as explicitly guarded by the Norris-LaGuardia Act.

At the outset a burden falls upon this Court to ascertain what is meant by a labor dispute as here brought into play. The subject matter with which these unions function is organized labor. The dispute is clearly a dispute between warring factions on the subject of collective bargaining, particularly as to which of them shall function with the employer to the exclusion of the other. There are no differences disclosed in the operative terms of the two labor contracts with the employer. Their provisions are the same in all things save only the names of the unions. I, therefore, conclude that the facts here disclose a labor dispute within the provisions of the Norris-LaGuardia Act.

The next problem relates to the effect of the above Section 185, upon the prior existing anti-injunction provisions of the Norris-LaGuardia Act. In this connection I am very deeply impressed with the sound reasoning of Judge Rifkind in Alcoa S. S. v. McMahon, D.C., 81 F.Supp. 541. In that painstaking opinion the Judge has not only solved the issue as a matter of statutory construction, but as well upon a study of the history of the legislation involved. Nothing I might say can improve upon it. Having found in that case that he had a labor problem before him he concluded that a suit under Section 185(a) opened the door for a money judgment only, and no equitable relief could be granted. I find the same here. The complaint is dismissed for lack of jurisdiction. It is, therefore, not necessary to pass upon any of the other issues raised.