**Jimmie W. HILL, et al.,**

v.

**WMATA, et al.,**

**No. CIV.A.03–1037.**

United States District Court,
District of Columbia.

March 25, 2004.

---

William George Jepsen, Jr., Crofton, MD, for Plaintiffs.

Robert G. Ames, Venable, LLP, Jonathan G. Axelrod, Beins, Axelrod & Kraft, P.C., Washington, DC, for Defendants.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendants' motions to dismiss. Plaintiffs, an individual Metro Transit Police Officer employed by the Washington Metropolitan Transit Authority ("WMATA" or "the Authority") and the Fraternal Order of Police/WMATA Police Labor Committee, sued WMATA and the incumbent union for the officers, Local 639 of the International Brotherhood of Teamsters, seeking a declaration that plaintiffs are entitled to a representational election. In the alternative, plaintiffs ask for a declaration that WMATA submit the plaintiffs' request to arbitration. This Court grants defendants' motions to dismiss.

## I.  BACKGROUND

The following facts are taken from plaintiffs' complaint.[1]

---

1.  At the motion to dismiss stage of litigation,       allegations in the complaint, and reasonable

Until February 2003, the Metro Transit Police Officers were represented by Teamsters Local 246. The officers were the largest unit within the Local. The current collective bargaining agreement, negotiated between WMATA and Local 246, was executed on May 15, 2002, but was made effective retroactively from October 1, 1998, through September 30, 2004.

Local 246 experienced financial difficulties, and the Teamsters imposed a trusteeship on the Local in August 2000. Though the financial situation of Local 246 improved somewhat under the trusteeship, in September 2002 the Teamsters proposed, and shortly thereafter the membership of the Local voted in favor of, a merger with Local 639. The merger took effect on February 1, 2003.

On February 7, 2003, plaintiffs submitted a petition to WMATA for a representation election, which had the signatures of more than half the members of the bargaining unit. WMATA nevertheless recognized Local 639 as the unit's bargaining representative on February 19, 2003. On March 25, 2003, WMATA denied plaintiffs' petition for an election. WMATA invoked the contract-bar doctrine and argued that the election petition was untimely, in that it was presented more than ninety days prior to the expiry of the collective bargaining agreement. Plaintiffs filed a complaint in this Court against WMATA and Local 639 challenging the denial as an abuse of discretion. Plaintiffs also claim that their dispute over whether they are entitled to a representation election is a question "concerning representation," and as such should be submitted to arbitration.

## II. DISCUSSION

WMATA is the creature of an interstate compact, codified at D.C.Code §§ 9–1107.01, *et seq.* Section 66 of the Compact, not the Federal Labor Relations Act or the National Labor Relations Act, governs WMATA's collective-bargaining relationship with its employees and their representatives. *See, e.g., Diven v. Amalgamated Transit Union & Local 689*, 38 F.3d 598, 601 (D.C.Cir.1994). Though neither the FLRA nor the NLRA is binding, the Compact incorporates the NLRA's definition of "employee," *see* Compact § 66(b), D.C.Code § 9–1107.01 (providing that WMATA "shall deal with and enter into written contracts with employees as defined in section 152 of title 29, United States Code …"), and WMATA has therefore consulted National Labor Relations Board precedent in determining its responsibilities under the Compact.

It is in this context that the Court is presented with plaintiffs' complaint and defendants' motions to dismiss, both centering on the proper interpretation of Section 66(c) of the Compact. In relevant part, Section 66(c) states:

In case of any labor dispute involving the Authority and [its] employees where collective bargaining does not result in agreement, the Authority shall submit such dispute to arbitration …. The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement provisions but not limited thereto, and including any controversy concerning any

inferences. drawn therefrom, generally must be accepted as true. A complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40

L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see Summit Health Ltd. v. Pinhas*, 500 U.S. 322, 325, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002).

differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in such agreements, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation. Each party shall pay one-half of the expenses of such arbitration. Compact § 66(c), D.C.Code § 9–1107.01.

### A. Standing

■■■ WMATA and Local 639 moved to dismiss plaintiffs' complaint for lack of standing.[2] In the view of defendants, Section 66(c) provides for an arbitration process between only two parties: WMATA and the incumbent union. In support of this argument, defendants point out that the provision designating each party to pay half of the expenses of arbitration implies that there will be only two parties to an arbitration. Defendants are correct that the Compact contemplates a two-party arbitration process, but the Court is at a loss to see why the incumbent union should always be one of the parties—in other words, why an individual employee would be forbidden from invoking the grievance process. In fact, Section 66(c) might be thought to contemplate the involvement of individual employees, by providing for arbitration of disputes "involving the Authority and [its] employees."

To be sure, there are signs pointing in the opposite direction. The Compact directs that in choosing the arbitration panel the "labor organization" shall play a key role, and it is clear that most disputes will see the organization as the representative of the employees. *See* Compact § 66(b), D.C.Code § 9–1107.01. Here, however, the interests of the individual employee plaintiff are at odds with those of the incumbent union, Local 639, and defendants would interpret the Compact to leave plaintiff with no avenue for his grievance. Certainly there is no clear expression in the Compact that would preclude an individual employee from making a grievance. For these reasons, and in light of the fact that individual employees often have access to arbitration in grievance processes pursuant to collective bargaining agreements, this Court holds that plaintiff Hill has standing.

Each of the plaintiffs raises identical claims in this action; indeed, each has filed the same documents in opposition to the motion to dismiss. It therefore is unnecessary to decide whether plaintiff Fraternal Order of Police has standing. *See, e.g., Watt v. Energy Action Educ. Found.,* 454 U.S. 151, 160, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981); *UAW–Labor Empl. & Training Corp. v. Chao,* 325 F.3d 360, 362 (D.C.Cir.2003); *Mountain States Legal Found. v. Glickman,* 92 F.3d 1228, 1232 (D.C.Cir.1996).

### B. Do Plaintiffs Have a Right to a Representation Election?

■■■ WMATA denied plaintiffs' petition for an election, citing the contract-bar

---

**2.** WMATA has also argued for dismissal based on its contention that the Compact provides no subject-matter jurisdiction over this dispute. *See* WMATA's Mot. to Dismiss at 8. Section 81 of the Compact, however, grants the district courts jurisdiction over "all actions brought by or against the Authority." This Court, therefore, has subject-matter jurisdiction. WMATA goes on, however, to claim that the Compact provides no cause of action

for failure to hold a representation election. This argument is analytically distinct from an argument over lack of subject-matter jurisdiction, and is a paradigmatic example of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief can be granted. WMATA's contention on this latter point is discussed *infra,* Part II.B.

doctrine, which is well established in NLRB adjudications though it appears nowhere in statute and is not the result of judicial mandate. *See generally* LEE MODJESKA & ABIGAIL COOLEY MODJESKA, FEDERAL LABOR LAW: NLRB PRACTICE § 8:03 (2003); 2 THEODORE KHEEL, LABOR LAW § 7A.03[3] (2001). According to the doctrine, a collective bargaining agreement will bar the bargaining unit from petitioning for a representation election during the life of the contract, except for the thirty-day period beginning ninety days before the contract's expiration.[3] Plaintiffs challenge WMATA's denial of their petition on this basis as an abuse of discretion, *see* Compl. ¶ 21, but point to no provision in the Compact that gives them the right to a representation election.

■ By mandating continuity in representation during the initial three years of a collective bargaining · agreement (but for exceptional circumstances not present here, as discussed *infra*), the contract-bar doctrine provides stability between employees, employers, and unions, while still allowing employees reasonable opportunity to change their representatives. *See Peoples Gas System, Inc. v. NLRB*, 629 F.2d 35, 38 n. 4 (D.C.Cir.1980); *In re: Gen'l Cable Corp.*, 139 NLRB 1123 (1962). The doctrine applies even where, as is appar-

ently the case here, the union has lost majority support. *See El Torito–La Fiesta Restaurants, Inc. v. NLRB*, 929 F.2d 490, 492 (9th Cir.1991) (quoting *Pioneer Inn Assocs. v. NLRB*, 578 F.2d 835, 838 (9th Cir.1978)). From WMATA's perspective, stability in employee representation is invaluable, particularly in light of its duty to "deal with" a labor organization that is authorized to act for the employees. Compact § 66(b), D.C.Code § 9–1107.01. A contract-bar rule that· is easily applied allows WMATA to know which labor organization has been authorized without consuming excessive time or resources.

■ The Court appreciates plaintiffs' frustration at WMATA's relative independence in its ability to decide to follow NLRB precedent or not. True, WMATA made its decision to deny the election petition in this case "unfettered by published rules and regulations." Compl. ¶ 22. This freedom is nevertheless insufficient to make WMATA's decision to *follow* NLRB precedent in this case an abuse of discretion. In essence, plaintiffs claim that though WMATA concededly has discretion in interpreting the Compact, and though the Compact does not speak directly to an employee's right to a representation election, it was an abuse of that discretion to

**3.** The contract-bar principle does not apply beyond three years after the execution of the contract. *See, e.g., In re General Dynamics Corp., Convair Div.*, 175 N.L.R.B. 1035, 1036 (1969). While in this case the contract covered the period 1998–2004, the agreement was signed in 2002. Whether or not NLRB precedent would mandate a three-year contract bar beginning at the contract's signing (and not its retroactive effective date), WMATA was certainly within its discretion in adopting the former interpretation. Because a collective bargaining agreement will not bar petitions filed prior to signing, *see In re Deluxe Metal Furniture Co.*, 121 NLRB 995, 999 (1958), a contrary interpretation would mean that the 2002 contract, covering six years, would provide no protection under the contract-bar rule at all, because three years from the effective date would still be prior to signing. That contrary interpretation would create the anomaly of evading the contract-bar rule while permitting a contract bar if the parties had signed two separate documents: one covering the retroactive period and another covering the period from signing through September 2004. WMATA therefore was within its discretion in concluding that the contract bars a representation election through September 2004 (when the contract expires by its own terms), except for the window period beginning ninety days before September 30, 2004.

adopt an interpretation of the labor relations provisions of that Compact in accordance with the forty-year-long practice of the National Labor Relations Board since the 1962 *General Cable* decision. The Court rejects plaintiffs' claim.

### C. Arbitration

Plaintiffs argue that even if this Court is not able to declare that plaintiffs are entitled to an election, the Court should nonetheless rule that plaintiffs are entitled to have an arbitrator decide the question. Plaintiffs' argument for arbitration is based on the Compact's declaration that "any labor dispute" shall be arbitrated and that the term " 'labor dispute' shall be broadly construed and shall include ... questions concerning representation." Compact § 66(c), D.C.Code § 9–1107.01.

Defendants offer two primary arguments against arbitration. The first argument is structural, based on the conception of labor disputes being between the employees, represented by a union, and WMATA. Defendants argue that Section 66(c)'s discussion of disputes that have not resulted after "collective bargaining," the procedure for giving the "labor organization" a role in selecting arbitrators, and the provision that "[e]ach party shall pay one-half of the expenses of [ ] arbitration" imply that only the union and WMATA shall be permitted to invoke arbitration. Defendants' second argument directly confronts plaintiffs' reading of the statute and maintains that the current dispute is not a "question concerning representation."

To the uninitiated, plaintiffs' claims unquestionably raise questions "concerning representation." They claim, after all, the right to hold an election to determine the identity of their representatives. But alas, language in interstate compacts does not always reflect the meanings ordinary readers would give it. "Questions concerning representation" is something of a term of art in the labor law field, and its presence in the labor-relations section of the Compact indicates that the labor-law meaning of the term was intended.

▮ In brief, an issue that relates to union representation is *not* a "question concerning representation" unless there is *substantial, reasonable* doubt about whether the incumbent union should be the recognized collective-bargaining agent of the employees. *See, e.g., NLRB v. Financial Institution Employees of Am., Local 1182,* 475 U.S. 192, 198–200, 106 S.Ct. 1007, 89 L.Ed.2d 151 (1986); *Human Dev. Org. v. NLRB,* 937 F.2d 657, 666 (D.C.Cir. 1991); *but cf. Allentown Mack Sales and Serv., Inc. v. NLRB,* 522 U.S. 359, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998) (holding that the NLRB standard of "reasonable doubt" concerning union support must mean uncertainty, contrary to the Board's interpretation that the employer must be certain the union lacks support). A party has raised a question concerning representation if it demonstrates that the union is not entitled to represent the employees or if there is reasonable doubt about the union's status. For example, and contrary to the facts of this case, if the union had undergone a change "so dramatic that the post-affiliation union lacks substantial continuity with the preaffiliation union," *Syscon Sys. Int'l, Inc. v. Int'l Bhd. of Elec. Workers, Local 1392,* 322 NLRB 539, 544 (1996); *see also In re Avante at Boca Raton, Inc.,* 334 NLRB 381, 2001 WL 1219581 (2001); *In re Hershey Chocolate Corp.,* 121 NLRB 901 (1958), or if the union no longer was willing or able to represent the employees, there would be a "question concerning representation." *See* MODJESKA & MODJESKA, FEDERAL LABOR LAW: NLRB PRACTICE § 8:03 at 12 (citing *In re Kent Corp.,* 272 NLRB 735 (1984), and *In*

*re Hershey Chocolate Corp.*, 121 NLRB 901).

    ■ Here there is no such doubt. The contract-bar doctrine is relatively mechanical in its application even, as here, where the recognized Local is not the same Local that represented the collective bargaining unit at the execution of the collective bargaining agreement. WMATA was well within its rights—even required, under NLRB precedent—to recognize Local 639 as the successor to Local 246 because of the obvious continuity between the Locals, which are, after all, both affiliated with the Teamsters. *See Syscon Sys. Int'l, Inc. v. Int'l Bhd. of Elec. Workers, Local 1392*, 322 NLRB at 544, 1996 WL 673001. In fact, the legality of WMATA's conduct in recognizing Local 639 is so clear that even plaintiffs do not contest it. Plaintiffs demand a representation election, but nowhere in the complaint do they offer the slightest criticism of WMATA for recognizing Local 639 as Local 246's successor. The substance of the complaint—WMATA's refusal to hold a representation election—is not a "question concerning representation."

    ■ To be sure, that conclusion does not end the case. Not only "questions concerning representation," but *any* "labor dispute involving the Authority and [its] employees where collective bargaining does not result in agreement" is arbitrable. Compact, § 66(c), D.C.Code § 9–1107.01. The Compact is quite explicit that "[t]he term 'labor dispute' shall be broadly construed and shall include" any of several types of disputes, the last of which is

"questions concerning representation." *Id.* Plaintiffs focus on this last category, however, in recognition that the others clearly do not apply. This dispute quite obviously is not one "concerning wages, salaries, hours, working conditions," and so forth. Applying the fundamental canon of *ejusdem generis* ("of the same sort"), the Court holds that "labor dispute" refers to disagreements over matters that may customarily be resolved in collective bargaining agreements. Where parties seek to include in the collective bargaining agreement the hourly wages to be paid workers, for example, but cannot agree on a figure, the disagreement is to be submitted to arbitration.[4] It is quite a different matter, however, to arbitrate the question of holding a representation election—a matter wholly outside the standard collective bargaining process. Collective bargaining, by the very nature of being "collective," requires representatives to be chosen by a separate process. *Cf. Int'l Ladies' Garment Workers v. NLRB (Bernhard–Altmann Texas Corp.)*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961) (holding that the employer violated Section 8(a)(2) of the NLRA by recognizing a union that had falsely claimed to represent a majority of workers); *see generally* 29 U.S.C. § 159 (NLRA provision regulating representation elections). Representation-election quarrels, therefore, are not "labor disputes," and employees have no right under the Compact to arbitrate them.

    ■ Furthermore, and for similar reasons, it is not clear to the Court that this

---

**4.** Though the union will engage in collective bargaining, an individual employee may still grieve over issues that could be (but were not) reflected in the agreement and have his grievance arbitrated. (The same process would apply if an individual employee grieved that he was being denied the benefits to which he was entitled under the collective bargaining agreement.) It is for that reason that individual plaintiffs have standing to sue in this action, as held above. It is a different question, however, whether the employees may arbitrate particular subjects, and this Court holds that the Compact limits those subjects to matters that may customarily be included in collective bargaining agreements.

matter "involves the Authority" as · required for arbitrable disputes. WMATA will surely be affected in some way by the entity chosen to bargain on behalf of its employees, and it was WMATA that denied plaintiffs' request for the election. But the choice of representative, unlike issues of wages, hours, and benefits, is not something over which an employer "bargains." WMATA must bargain with whomever is the · duly elected representative of the employees, and accordingly the Authority does not have a dog in this fight. *Cf. Bloedel Donovan Lumber Mills v. Int'l Woodworkers of Am.*, 4 Wash.2d 62, 102 P.2d 270, 273–74 (1940) (holding that no labor dispute can exist between an employer and a minority union); *but see Fitzgerald v. Haynes*, 146 F.Supp. 735, 738 (M.D.Pa.1956) (quoting *Duris v. Phelps Dodge Copper Prods. Corp.*, 87 F.Supp. 229, 232 (D.N.J.1949)), *aff'd on other grounds* 241 F.2d 417 (3d Cir.1957). As an alternative basis for· this decision, therefore, the Court would hold that the matter to be resolved does not "involv[e] the Authority" within the meaning of Section 66(c) of the Compact. Plaintiffs have no right to arbitrate this dispute.

For the foregoing reasons, defendants' motions to dismiss are granted. An Order consistent with this Opinion will be issued this same day.

### ORDER AND JUDGMENT

For the reasons stated by separate Opinion issued this same day, it is hereby

ORDERED that Defendant Washington Metropolitan Area Transit Authority's Motion to Dismiss [3] is GRANTED; it is

FURTHER ORDERED. that the Motion to Dismiss on Behalf of Teamsters Local 639[2] is, GRANTED; it is

FURTHER ORDERED that JUDGMENT is entered for the Washington Metropolitan Area Transit Authority and Drivers, Chauffeurs and Helpers Local Union No. 639; it is

FURTHER ORDERED that this Order and Judgment shall constitute a FINAL JUDGMENT in this case. This is a final appealable order. *See* FED. R. APP. P. 4(a).

SO ORDERED.